IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DONALD J. BOULA,                )
                                )
        Plaintiff,               )
                                )
    v.                           )        1:11CV366
                                )
THE UNITED STATES OF AMERICA,    )
                                )
        Defendant.               )

**ORDER**

This matter is before this court for review of the Memorandum Opinion and Recommendation ("Recommendation") filed on April 2, 2013, by the Magistrate Judge in accordance with 28 U.S.C. § 636(b). (Doc. 17.) In the Recommendation, the Magistrate Judge recommends that Defendant's Motion to Dismiss (Doc. 7) be granted. The Recommendation was served on the parties to this action on April 2, 2013. Plaintiff filed timely objections (Doc. 19) to the Recommendation, and Defendant responded to the objections (Doc. 20).

This court is required to "make a de novo determination of those portions of the [Magistrate Judge's] report or specified 'proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This court "may accept, reject,

or modify, in whole or in part, the findings or recommendations made by the [M]agistrate [J]udge. . . . [O]r recommit the matter to the [M]agistrate [J]udge with instructions." Id.

This court has reviewed the Recommendation in its entirety and has made a de novo determination which agrees with the Magistrate Judge's Recommendation in certain respects and differs in others. This court will adopt the Recommendation in part.[1]

This case presents a rare issue under North Carolina law: the conditions under which a medical malpractice complaint must be dismissed because a plaintiff failed to proffer an expert who was "willing to testify" on his behalf.[2] The Magistrate Judge recommends dismissing Plaintiff's medical malpractice claim because Dr. Sharon Fekrat, Chief of Ophthalmology at the Durham VA Medical Center and one of Plaintiff's treating physicians, is not willing to testify as an expert witness on Plaintiff's

---

[1] Although this court finds that the Complaint should not be dismissed on the current record, it does agree with many of the legal conclusions reached in the Recommendation.

[2] Under North Carolina law, a plaintiff in a medical malpractice lawsuit must certify in his complaint that his medical care has been reviewed "by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care." N.C. Gen. Stat. § 1A-1, Rule 9(j)(1).

behalf.[3]  For the reasons addressed herein, this court finds that an evidentiary hearing – as outlined in this Order - is both proper and necessary before Defendant's motion to dismiss may be resolved.

Plaintiff objects to the Magistrate Judge's Recommendation on the following grounds (Pl.'s Objections (Doc. 19)):

(1)   The application of North Carolina Rule of Civil Procedure 9(j) in this case. (Id. at 5.)

(2)   The "failure . . . to apply the standard required of a court in considering a Rule 12(b)(6) motion." (Id. at 6.)

(3)   The failure to consider Dr. Fekrat's email and Plaintiff's affidavit submitted with his response to the motion to dismiss. (Id. at 5-6.)

(4)   The finding that Dr. Fekrat's affidavit unequivocally demonstrates that she was unwilling to testify. (Id. at 7.)

---

[3]  Defendant also contends that the evidence does not support Plaintiff's Rule 9(j) certification because Dr. Fekrat did not opine that "the medical care did not comply with the applicable standard of care" in the email exchange on which Plaintiff relies. (Def.'s Resp. (Doc. 20) at 10 (citing N.C. R. Civ. P. 9(j)).) Defendant did not raise this issue in its motion to dismiss.  In addition, Dr. Fekrat did opine that "[i]t is probable that [Plaintiff's injury] was the result of either carelessness, negligence, lack of proper skill, or error in judgment on the part of the VA" (Def.'s Mem. in Supp. of Mot. to Dismiss, Decl. of Dr. Sharon Fekrat ("Fekrat Decl."), attached email (Doc. 8-2) at 3), and the email may not be the only information Plaintiff received from Dr. Fekrat as to her medical opinion.

-3-

(5) The Magistrate Judge's conclusion that Plaintiff's knowledge or reasonable belief is irrelevant and failure to consider what Plaintiff reasonably believed at the time he filed his Complaint. (Id. at 7-8.)

(6) The failure to apply the rule announced in Crist v. Moffatt, 326 N.C. 326, 336, 389 S.E.2d 41, 47 (1990), that "defense counsel may not interview plaintiff's non-party treating physicians privately without plaintiff's express consent." (Pl.'s Objections (Doc. 19) at 10.)

These objections will be addressed in turn.[4]

Plaintiff objects to the application of North Carolina Rule of Civil Procedure 9(j) to his claim under the Federal Tort Claims Act ("FTCA"), contending that it is a state procedural rule without a federal counterpart. (Id. at 5.) When the Recommendation and Plaintiff's objections were filed, the Fourth Circuit had not yet directly addressed this issue. Although it did so in an unpublished opinion, a panel of the Fourth Circuit has now found that federal district courts should apply Rule 9(j) in medical malpractice actions under North Carolina law.

---

[4] Plaintiff also objects to the statement in the Recommendation that Dr. Fekrat was "not Plaintiff's treating physician." (See Recommendation (Doc. 17) at 8.) This court agrees with the parties that Dr. Fekrat was one of his treating physicians. The statement in the Recommendation does not appear to have affected the analysis.

-4-

See Littlepaige v. United States, No. 12-1367, 2013 WL 2501744, at *3 (4th Cir. June 12, 2013) (finding in an FTCA case "that, where applicable, a Rule 9(j) certification is a mandatory requirement for a plaintiff in a North Carolina medical malpractice action").

Even if the Fourth Circuit had not recently addressed this issue, this court would apply Rule 9(j) in this case. "The district courts in this circuit are . . . unanimous that a Rule 9(j) certification is required to sustain a medical malpractice action under the FTCA in North Carolina," id. (collecting cases), and this court finds those opinions persuasive. See, e.g., Lauer v. United States, Civil No. 1:12cv41, 2013 WL 566124, at *2-4 (W.D.N.C. Feb. 13, 2013). "An action under the FTCA may only be maintained if the Government would be liable as an individual under the law of the state where the negligent act occurred." Kerns v. United States, 585 F.3d 187, 194 (4th Cir. 2009) (citing 28 U.S.C. § 1346(b)(1)); see also Molzof v. United States, 502 U.S. 301, 305 (1992) ("[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law."). The Supreme Court of North Carolina has stated that Rule 9(j) "require[s] physician review as a condition for filing [a medical malpractice] action." Thigpen v. Ngo, 355 N.C. 198, 203-04, 558 S.E.2d 162, 166 (2002)

-5-

(emphasis added); see also id. at 202, 558 S.E.2d at 165 ("[M]edical malpractice complaints [in North Carolina] have a distinct requirement of expert certification with which plaintiffs must comply."). As such, it is a substantive condition for establishing medical malpractice liability under North Carolina law. Because a plaintiff cannot maintain an action for medical malpractice against an individual under North Carolina law without including a certification that complies with Rule 9(j), that rule is part of the state law for establishing liability this court must apply in considering a claim under the FTCA.

Plaintiff also objects to the Magistrate Judge's "failure . . . to apply the standard required of a court in considering a Rule 12(b)(6) motion." (Pl.'s Objections (Doc. 19) at 6.) Because Rule 9(j) is a substantive state law that the FTCA "assimilates into federal law," see Feres v. United States, 340 U.S. 135, 142 (1950), this court must interpret and apply that rule as a North Carolina court would. See Iodice v. United States, 289 F.3d 270, 275 (4th Cir. 2002). Under North Carolina law, it is "well established that even when a complaint facially complies with Rule 9(j) by including a statement pursuant to Rule 9(j), if discovery subsequently establishes that the statement is not supported by the facts, then dismissal

-6-

is likewise appropriate," Ford v. McCain, 192 N.C. App. 667, 672, 666 S.E.2d 153, 157 (2008), "at least to the extent that the exercise of reasonable diligence would have led the party to the understanding that its expectation was unreasonable." Moore v. Proper, 366 N.C. 25, 31-32, 726 S.E.2d 812, 817 (2012).[5] Accordingly, because a plaintiff's "compliance with Rule 9(j) requirements clearly presents a question of law to be decided by a court, not a jury," the court "must consider the facts relevant to Rule 9(j) and apply the law to them." Phillips v. A Triangle Women's Health Clinic, Inc., 155 N.C. App. 372, 376, 573 S.E.2d 600, 603 (2002).

Rule 9(j) functions as a condition for filing a medical malpractice action. Thigpen, 355 N.C. at 203-04, 558 S.E.2d at 166. That condition would not serve its purpose if a court must consider only the complaint itself to determine whether a plaintiff has in fact complied with the statute. Therefore, this court finds that, in applying state substantive law, it may

---

[5] Moore specifically addresses the portion of Rule 9(j) that requires a medical malpractice plaintiff to produce a "person who is reasonably expected to qualify as an expert witness." See N.C. Gen. Stat. § 1A-1, Rule 9(j)(1) (emphasis added). The requirement that the person be "willing to testify" does not include comparable language. However, this court finds that Moore does have some relevance in the instant case.

appropriately consider evidence outside the Complaint in determining whether Plaintiff has satisfied Rule 9(j).

Plaintiff objects to the Magistrate Judge's failure to consider his affidavit and to the determinative weight assigned Dr. Fekrat's affidavit (Pl.'s Objections (Doc. 19) at 8), and this court agrees in light of the unique facts of this case. Because "compliance or noncompliance with the Rule [9(j)] is determined at the time of filing," Moore, 366 N.C. at 31, 726 S.E.2d at 817, Dr. Fekrat's unwillingness to testify at this time does not necessarily mean that Plaintiff did not include an appropriate Rule 9(j) certification in his Complaint. As addressed more fully below, this court has been presented with conflicting affidavits as to the determinative issue of whether Dr. Fekrat was willing to testify at the time the Complaint was filed.

This court also agrees with Plaintiff that what he reasonably believed as to Dr. Fekrat's willingness to testify is relevant to whether he complied with Rule 9(j) – at least to the extent that any reasonable belief was developed through reasonable diligence. Although the North Carolina Court of Appeals found in McGuire v. Riedle, 190 N.C. App. 785, 788, 661 S.E.2d 754, 757 (2008), that there is "no good faith exception" to the certification requirement, that case is distinguishable

-8-

from the present action.  In McGuire, the plaintiff admitted in response to the defendant's interrogatory requests that the opinions of the surgeon he relied on for his Rule 9(j) certification were unknown.  Id. at 786, 661 S.E.2d at 756.  In addition, during his own deposition, Plaintiff stated that he could not recall either speaking with the surgeon regarding an alleged breach of the standard of care or the surgeon having ever agreed to testify on his behalf.  Id.  This court finds that a North Carolina court would not apply McGuire to bar consideration of what a plaintiff who had communicated with his physician with the intent of obtaining expert testimony reasonably believed as to that physician's willingness to testify on his behalf.

In this case, Defendant submitted the affidavit of Dr. Fekrat, in which Dr. Fekrat has admitted sending an email as described by Plaintiff outlining Dr. Fekrat's opinion as to the treatment of Plaintiff.  However, Dr. Fekrat also states in the affidavit as follows:

> 4.   Plaintiff asked me to testify in this matter on his behalf and I advised him I would not be his expert witness.
>
> 5.   I am not willing to testify that the medical care at issue in this case did not comply with the applicable standard of care in this case.

(Fekrat Decl. (Doc. 8-2) at 1.)

-9-

In response to Dr. Fekrat's affidavit, Plaintiff submitted an affidavit in which Plaintiff states as follows:

> 5. Before the complaint was filed in this matter, I had an appointment with Dr. Fekrat on or about March 24, 2011. At that appointment, I asked her about the comments referred to in paragraph 4, above, and whether she was willing to testify to those opinions.
>
> 6. Dr. Fekrat told me that she would "stand by my statement" and, if asked, would be willing to testify to that.

(Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss, Ex. 1, Aff. of Donald J. Boula (Doc. 9-1) at 2.)

Both affiants agree that Plaintiff asked Dr. Fekrat whether she would be willing to testify; they differ as to her answer to that question. In light of the directly contradictory testimony provided in the affidavits, this court finds that an evidentiary hearing is necessary to resolve the contradictory statements contained in the affidavits regarding Dr. Fekrat's willingness or unwillingness to testify as of May 11, 2011 (the date of filing of the Complaint). The evidentiary hearing will be limited to the issue of what was communicated between Plaintiff

-10-

and Dr. Fekrat and any other facts necessary to the determination of whether Plaintiff complied with Rule 9(j).[6]

Finally, Plaintiff contends that the contact between Defendant's counsel and Dr. Fekrat, Plaintiff's treating physician, was improper under Crist v. Moffatt, 326 N.C. 326, 389 S.E.2d 41 (1990). (Pl.'s Objections (Doc. 19) at 10.) This court is not persuaded by Plaintiff's objection.

First, this court is not convinced that a state rule limiting defendants to formal methods of discovery when seeking information from plaintiffs' nonparty treating physicians would apply in FTCA cases.[7] Under the FTCA, the United States is subject to tort liability "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, and only to the extent that a private person

---

[6] Dr. Fekrat's email may properly be considered, but it provides only limited support for a finding that Plaintiff reasonably believed Dr. Fekrat was willing to testify on his behalf. The existence of an opinion does not necessarily indicate an individual's willingness to testify to that opinion.

[7] The Crist rule is based on "grounds distinct from that of physician-patient privilege." Crist, 326 N.C. at 331, 389 S.E.2d at 44. If the rule were based on physician-patient privilege, this issue would be more straightforward. Federal, not state, privilege law applies in FTCA cases, see Tucker v. United States, 143 F. Supp. 2d 619, 622-24 (S.D. W. Va. 2001), and there is no physician-patient privilege under federal law, Gilbreath v. Guadalupe Hosp. Found. Inc., 5 F.3d 785, 791 (5th Cir. 1993).

-11-

"would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Although "the extent of the United States' liability under the FTCA is generally determined by reference to state law," Molzof, 502 U.S. at 305, the Crist rule affects how discoverable information may be obtained, not the conditions under which liability may be imposed. See Crist, 326 N.C. at 333, 389 S.E.2d at 45 ("[T]he prohibition against unauthorized ex parte contacts regulates only how defense counsel may obtain information from a plaintiff's treating physician, i.e., it affects defense counsel's methods, not the substance of what is discoverable." (quoting Manion v. N.P.W. Med. Ctr. of N.E. Pa., Inc., 676 F. Supp. 585, 593 (M.D. Pa. 1987))). The FTCA adopts state law to "fill the interstices of federal law," see Moor v. Alameda Cnty., 411 U.S. 693, 701 & n.11 (1973); however, there is no "interstice" to be filled by state law with regard to the rules governing discovery.

Second, even if state law does apply, this court finds that a North Carolina court would not apply Crist to the facts presented in this case, that is, where the defendant's counsel asks the plaintiff's treating physician, who is employed by the defendant, whether the physician agreed to testify on the plaintiff's behalf. This is particularly the case where, as

here, the treating physician participated in some role in internal hospital processes related to the incident from which the lawsuit arose. (See Fekrat Decl. (Doc. 8-2) ¶ 3 ("The email [on which Plaintiff relies] was sent in connection with Mr. Boula's application for increased VA benefits as a result of the loss of his eye.").)

This court can find no record of a North Carolina court having addressed whether an institutional defendant may only communicate with one of its employees who was not involved in the alleged medical malpractice through formal means of discovery. The Crist court cited several reasons for prohibiting ex parte contact between defense counsel and a plaintiff's nonparty treating physician: "patient privacy, the confidential relationship between doctor and patient, the adequacy of formal discovery devices, and the untenable position in which ex parte contacts place the nonparty treating physician." Crist, 326 N.C. at 336, 389 S.E.2d at 47. The privacy and confidentiality concerns are substantially, if not completely, eliminated when the treating physician is employed by the defendant medical center. In finding that a state rule similar to Crist did not bar ex parte communications between defense counsel and a plaintiff's physician who was employed by

the institutional defendant, the Arizona Court of Appeals provided the following analysis:

> The [employer-employee] relationship gives rise to obligations of the employees to the employer that are not present when the treating physician is not an employee, and equally impose obligations on the employer to the patients and employees. Because the employer is inextricably involved in the relationship between an employed physician and a patient, we cannot conclude that public policy creates a wall between the employees and their employer regarding that patient.

Phoenix Children's Hosp., Inc. v. Grant, 228 Ariz. 235, 239, 265 P.3d 417, 421 (Ct. App. 2011). But see Aylward v. Settecase, 409 Ill. App. 3d. 831, 838, 948 N.E.2d 769, 774 (2011) (prohibiting ex parte communications with a plaintiff's treating physician "whose actions are not a potential basis for the hospital's liability"). This court finds that a North Carolina court would adopt the reasoning in Phoenix Children's Hospital and find that the Crist rule would not bar the communications at issue in this case.

**IT IS THEREFORE ORDERED** that an evidentiary hearing will be held as outlined in this Order. At that hearing, the parties shall address what Dr. Fekrat communicated to Plaintiff in regard to testifying on his behalf. This court will make findings of fact and resolve Defendant's motion to dismiss after the evidentiary hearing. This court therefore takes the recommendation of the Magistrate Judge that Defendant's motion

-14-

to dismiss (Doc. 7) be granted and the related analysis as to Dr. Fekrat's willingness to testify (Doc. 17 at 6-7) under advisement pending the hearing.

**IT IS FURTHER ORDERED** that the findings of the Magistrate Judge that North Carolina Rule of Civil Procedure 9(j) applies in this medical malpractice complaint asserted pursuant to the FTCA (Doc. 17 at 3-4) and that <u>Crist</u> should not be extended to the facts of this case (<u>id.</u> at 7-8) are **ADOPTED**.

The Clerk is hereby directed to set this matter for an evidentiary hearing following consultation with the parties.

This the 7th day of November, 2013.

                                          /s/ William L. Osteen, Jr.
                                            United States District Judge